Case 4:21-cv-02326 Document 96 Filed on 03/02/23 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
March 02, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN SCHEAFFER, | § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 4:21-cv-2326 |
| v. | § § | |
| ALBERTSON'S LLC, ALBERTSONS COMPANIES, LLC, SAFEWAY INC., ADAM PETIT, MICHAEL HANBY, RANDALL'S FOOD & DRUG, LP, GROGAN'S MILL RETAIL CENTER GP, LLC, THE J. BEARD REAL ESTATE COMPANY, LP, TYLER REFRIGERATION CORPORATION, HILLPHOENIX, INC., AND DANFOSS, LLC, | § § § § § § § § § § § § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment filed by Defendants Albertson's LLC, Albertsons Companies, LLC, and Randall's Food & Drugs LP (ECF 78). Plaintiff Steven Scheaffer ("Plaintiff" or "Scheaffer") filed a Response (ECF 80), and the moving Defendants filed a Reply (ECF 81). After the Motion for Summary Judgment had been fully briefed, and by agreement of the parties, Defendants Albertson's LLC and Albertsons Companies, LLC were dismissed from the suit without prejudice. ECF 95. Therefore, as to Albertson's LLC and Albertsons Companies LLC, the Defendants' Motion for Summary Judgment should be

1

TERMINATED AS MOOT. As to Defendant Randall's Food & Drugs LP ("Randall's"), the Court RECOMMENDS the Motion for Summary Judgment be DENIED.[1]

## I.     Factual and Procedural Background

Plaintiff brings this action for personal injury arising from a June 21, 2019 pipe rupture that occurred at Randall's Store 2673 ("Store 2673"). ECF 5 at 64. At the time of the incident, Plaintiff was employed as a technician by Hussmann Service Corporation ("Hussmann"), a contractor providing repair and maintenance services for refrigeration systems. ECF 80-7.

Hussmann received a service call from Randall's Store 2673 on June 19, 2021, and dispatched Plaintiff to repair or replace a fan motor on "the condenser associated with Rack No. 2." ECF 80-10 at 2; ECF 80-6 at 56. Plaintiff worked until approximately 4 a.m. to repair the condenser, but did not have a replacement fan motor with him. ECF 80-6 at 56. He returned to the site the next morning to complete the condenser fan repair job, and also to address a leak in the refrigerant piping, which he believed had many pinhole leaks. *Id.* While Plaintiff was working to complete the condenser repair, a pipe in the refrigeration line "became over pressurized and ruptured," knocking him to the ground and causing severe injury to his leg. ECF 5 at 64.

Plaintiff's Original Petition was filed in state court and named as defendants only the "Director of Maintenance," Michael Hanby, and the "Maintenance Specialist for Randall's Food & Drugs, LP," Adam Petit. ECF 5 at 45; ECF 78-2 at ¶ 2. Both were dismissed from the case on October 15, 2021. ECF 43 at 19. Plaintiff filed a First Amended Petition in state court on June 8, 2021, naming Randall's Food & Drugs LP, the Albertson's entities, and other Defendants. ECF 5 at 60. The case was removed to this court on July 19, 2021 based on diversity jurisdiction. ECF

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 31.

1 at 1-2. Since the removal to federal court, Hussmann has been designated as a Responsible Third Party pursuant to Sections 33.004(a) and 33.011(6) of the Texas Civil Practice and Remedies Code. ECF 63.

Randall's is the only named defendant remaining in the case as all other defendants have been dismissed—either by agreement, for lack of jurisdiction or improper joinder, or after summary judgment. ECF 43, 57, 90, 94, and 95. As to Randall's, Plaintiff alleges claims of (1) negligence, (2) gross negligence, and (3) premises liability. ECF 5 at 65-67, 70. Randall's moves for summary judgment, arguing that Plaintiff's claims are barred under Chapter 95 of the Texas Civil Practice & Remedies Code. ECF 78 at 1. As explained below, the Court RECOMMENDS that Randall's Motion for Summary Judgment be DENIED.

## II.    Legal Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145,

3

149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

### III. Analysis

**A. Chapter 95 of the Texas Civil Practice & Remedies Code governs Plaintiff's claims against Randall's.**

Chapter 95 of the Texas Civil Practice & Remedies Code governs negligence claims "against a property owner . . . for personal injury . . . to . . . an employee of a contractor or subcontractor" and "[t]hat arise[] from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 95.002). Pursuant to Section 95.003, a property owner is *not liable* for personal injury incurred by an employee of a contractor who repairs an improvement to real property, including personal injury arising from an unsafe workplace, *unless*:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE § 95.003. Where Chapter 95 applies, "a plaintiff's 'sole means of recovery' is section 95.003." *Energen Res. Co. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (quoting *Abutahoun*, 463 S.W.3d at 51-52).

4

The parties have stipulated that Randall's owned and operated Store 2673 where Plaintiff was injured. ECF 92. It is undisputed that Plaintiff was an employee of Hussmann and was performing repairs to the refrigeration system at the time he was injured. It is also undisputed that at the time of Plaintiff's injury, Hussmann was a contractor hired to provide maintenance and repairs to the refrigeration system in Randall's Store 2673. ECF 78-2 at 2; ECF 80-7. Therefore, Plaintiff's claims against Randall's are governed by Chapter 95 of the Texas Civil Practice & Remedies Code.

Randall's argues it is entitled to summary judgment as a matter of law because Plaintiff cannot demonstrate both requirements of Section 95.003: (1) that Randall's exercised or retained some control over the manner in which Hussmann employees performed their service and repair work, and (2) that Randall's had actual knowledge of the danger or condition that caused Plaintiff's injury.[2] ECF 78 at ¶ 11. Plaintiff contends he has presented summary judgment evidence raising a fact issue as to both requirements. ECF 80 at 21. The elements of control and actual knowledge are addressed separately below.

### B. Plaintiff has raised a genuine issue of fact as to whether Randall's exercised or retained some control over Hussmann's work.

The right to control the work of a contractor can be demonstrated if (1) a contractual agreement explicitly assigns the premises owner a right to control; and/or (2) the premises owner "actually exercised control over the manner in which the independent contractor's work was performed." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). A premises owner may be liable if "the contractor is controlled as to his methods of work, or as to operative detail." *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (quoting RESTATEMENT (SECOND) OF TORTS

---

[2] Randall's motion for summary judgment did not address the adequacy of any warning, presumably because it argues it did not have actual knowledge of the danger or condition.

5

§ 414 cmt. c (1965)). "There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* More specifically, "[a] defendant retains some control by expressly or tacitly approving an unsafe working condition the defendant has the authority to correct." *Hernandez v. Amistad Ready Mix, Inc.*, 513 S.W.3d 773, 776 (Tex. App.—San Antonio 2017, no pet.) (citing *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001)).

   1. **Contractual Control**

   The summary judgment record contains evidence sufficient to raise a fact issue as to Randall's contractual rights to control Hussmann's work. ECF 80 at 22. Hussmann and Randall's operated for some period of time under a written Service Agreement that incorporated Exhibits A through H. ECF 80-7. Exhibit A of the Service Agreement required Hussmann to, among other things, "[a]dhere to the guidelines for handling and recording refrigerant" defined in "Exhibit D HVACR Terms and Conditions Agreement." *Id.* at 11. The scope of work included "[m]echanical centers, racks and condensing units including but not limited to . . . refrigeration piping . . . [and] [f]inding and repairing all refrigerant leaks and maintain Company's refrigerant leak records." *Id*. at 13. Randall's Director of Maintenance, Michael Hanby, testified that Exhibit A "lays out what [Randall's] mandates from its service providers[.]" ECF 80-4 at 9-10 (32:13-33:19).

   Exhibit B to the Service Agreement, the "Preventative Maintenance Scope of Work," lists the Preventative Maintenance Services Randall's required Hussmann to perform and the schedule on which the work was to be performed—annually, quarterly, or as frequently as local conditions required. ECF 80-7 at 15. Exhibit B required Hussmann to perform quarterly refrigeration preventative maintenance, including among many other tasks: "leak checks on all refrigerant piping on condensers[;]" "[r]ecord refrigerant and oil levels in machine room log book[;]" and "provide recommendations and follow up . . . a separate work order to be issued pending

6

approval[.]" *Id*. Exhibit B also required Hussmann to provide an annual "written report on the condition of evaporative condensers . . . ." *Id*. According to Michael Hanby, the tasks and procedures outlined in Exhibit B were not optional and were items Randall's required Hussmann to perform under the Service Agreement. ECF 80-4 at 10 (36:2-14).

Exhibit D to the Service Agreement, the "HVACR Terms and Conditions,"[3] set forth requirements for Hussmann to follow, including "SPECIFIC REQUIREMENTS REFRIGERATION AND/OR HVAC SERVICE PROVIDERS." ECF 80-7 at 41-43. The "Specific Requirements" state that Hussmann was required to maintain the store's "Refrigeration Service Log" and use refrigerant supplied by the Randall's family of stores and provide a physical inventory of refrigerant provided to Hussmann no less than every four weeks using the "Refrigerant Inventory Form." *Id*. at 42. Michael Hanby testified that Exhibit D contains "terms and conditions dictated [by Randall's] . . . to Hussmann that must be done in Store 2763." ECF 80-4 at 11 (37:12-17). Mr. Hanby's testimony regarding Exhibit D includes the following exchange:

> Q: Help me out. What does the term "specific requirements" mean to you?
> A: Specific requirements are items that must be done.
> Q: Okay. Whose requirements are they? [Randall's]?
> A: The requirements are from the [Randall's] corporation, yes.
> Q: Okay. So when I see, "specific requirements for refrigeration and or/HVAC service providers," that's [Randall's] specific requirements for Hussmann in this particular situation?
> A: Correct.
> Q: In other words, [Randall's] is going through, . . . specifically establishing the way that Hussmann must go about its work if it wants to continue to work for [Randall's]. Fair enough?
> A: Correct.

---

[3] HVACR stands for Heating, Ventilation, Air Conditioning, and Refrigeration. ECF 80-4 at 10 (36:15-22).

*Id.* at 13 (47:11-48:2). Hanby also testified that Exhibit D to the Service Agreement "dictated the protocol by which the refrigerant would be added and monitored[,]" and that Hussmann was required to comply with the procedures identified in the document "to the letter" or risk termination. *Id.* at 13-14.

These contractual provisions and the testimony of Randall's Director of Maintenance Michael Hanby demonstrate that the Service Agreement gave Randall's more control over Hussmann's work than simply "the right to order the work to start or stop or to inspect progress or receive reports." TEX. CIV. PRAC. & REM. CODE § 95.003. Thus, Plaintiff has presented summary judgment evidence raising an issue of disputed fact as to whether the Service Agreement provided Randall's with the right to exercise some control over Hussmann's work.

### 2. Actual Control

Plaintiff argues that in addition to the contractual control discussed above, the summary judgment record contains evidence demonstrating actual control by Randall's over Hussmann's work on the refrigeration system. Although Michael Hanby's testimony creates a factual dispute as to whether the Service Agreement was terminated or simply modified (*compare id.* at 7 (22:10-23:20) *with id.* at 16 (58:14-23)), he testified that the mandatory requirements set by Randall's in the Service Agreement remained in effect and applicable to Hussmann's work at all times. *Id.* at 16 (58:14-59:2). Regardless of whether the Service Agreement was terminated or the billing arrangement was modified, it is undisputed that Randall's paid Hussmann for its services according to a "time and materials" arrangement beginning sometime in 2017 or 2018 and well before the June 2019 incident. *Id.* at 7 (21-24); ECF 80-5 at 43 (166:20-167:6). Hanby testified that he decided to implement the time and materials arrangement with Hussmann because it allowed him greater *control* over the services performed by Hussmann and the cost to Randall's:

8

> Q. Why is it that you decided that you wanted to go a time and material agreement and replace the service agreement that was in place?
>
> A. Time and material, *I had more control on what was being done on the stores.* Time and material – their contract for service agreement was – went up too high, and I could manage it myself on a time and material basis for the same amount of work.
>
> * * *
>
> Q. Is it fair to say that the decision to you with respect to moving to a time and materials as opposed to a service agreement was about money?
>
> A. *It was cost and control.*
>
> Q. And when you say "control," tell me what you mean by that.
>
> A. *I get to dictate what all was being done in the stores* to make sure it's being done on a timely basis, and I thought I did a better job than what was being done.

ECF 80-4 at 18-19 (68:7-14; 69:8-16) (all emphasis added). According to Mario Gorgano, Hussmann's Operations Manager, once Mr. Hanby terminated the Service Agreement and the preventative maintenance required by that Agreement, Hussmann "[did not] do anything" to service the refrigeration unit until called upon by Randall's. ECF 80-5 at 43 (165-168). Hanby, too, testified that under the Time and Materials arrangement, it was Randall's who decided when to perform preventative maintenance, and that unless specifically asked, Hussmann did not perform preventative maintenance after the Service Agreement was modified. ECF 80-4 at 18 (67:19-68:6). Furthermore, Plaintiff's expert has provided a Declaration in which he states that based on his review of the evidence, decisions about when and what type of maintenance Hussmann could perform were made by Randall's Phoenix-based corporate department, not by Hussmann. ECF 80-6 at 11. Plaintiff's expert expanded on the controlling effect the Time and Materials arrangement had on Hussmann's ability to provide needed maintenance:

9

> Randall's typical working service policy involved a "remediation"-type arrangement where *Hussman was told to perform the least expensive repair or replacement that would be sufficient to get the failed system back online as quickly as possible.* …[M]any of the repairs Hussman made at the behest of Randall's were "band-aids" that required, but often did not receive, follow-up for more permanent repairs. From the evidence, Randall's controlled these aspects of Hussman's work in that *it dictated exactly what repairs would be made* and when those repairs would be made.

*Id.* at 12 (all emphasis added).

The issue of whether Randall's controlled the Hussmann technicians' ability to perform preventative maintenance goes directly to the dangerous condition identified by Plaintiff's expert as a key cause of the incident: The decision by Randall's to discontinue regular periodic inspections and maintenance, coupled with its earlier decision to change the refrigerant used in the system from R-22 to R-448A. *Id.* at 6, ¶ 14. The decision to convert the system from R-22 to R-448A was made by Randall's, not Hussmann, and Randall's considered the number of refrigerant leaks a store's system had experienced when deciding whether to convert the system. ECF 80-4 at 26-27 (100:1-101:25). Because the summary judgment record contains evidence demonstrating that Randall's exercised some control over whether preventative maintenance was performed and fully controlled the decision to convert Store 2673 to R-448A refrigerant, the record raises an issue of fact regarding Randall's control over Hussmann's work with respect to the key causes of the incident as identified by Plaintiff's expert.

In sum, Plaintiff has raised fact issues as to whether Randall's exercised control over Hussmann's work through its contractual provisions or actual control over Hussmann's ability to perform preventative maintenance under the Time and Materials arrangement. Construing all reasonable inferences in Plaintiff's favor as the Court must, a reasonable jury could find that Randall's "exercise[ed] or fail[ed] to exercise control over the part of the independent contractor's work that created the dangerous condition" leading to Plaintiff's injury, *Wallace*, 642 S.W.3d at

10

511; or that Randall's exercised sufficient control over Hussmann so that its employees were "not entirely free to do the work in [their] own way[,]" *Chapa*, 11 S.W.3d at 155; or that Randall's exercised control over Hussmann's work by "tacitly approving an unsafe working condition [Randall's had] the authority to correct." *Hernandez*, 513 S.W.3d at 776.

    **C. Plaintiff has raised a genuine issue of fact as to whether Randall's had actual knowledge of the dangerous condition giving rise to Plaintiff's injury.**

In order to recover on his claim governed by Chapter 95, Plaintiff must be able to show that Randall's had actual knowledge of the danger or condition resulting in his injury. *Ineos USA v. Elmgren*, 505 S.W.3d 555, 565 (Tex. 2016). "Actual knowledge of the danger or condition may be shown through circumstantial evidence." *Hernandez*, 513 S.W.3d 777 (citing *Elmgren*, 505 S.W.3d at 565). Consistent with agency principles, an employee's knowledge of a condition may be imputed to his or her employer. *Id.* at 787 (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex. 1984)). Randall's contends that, as a matter of law, Plaintiff cannot demonstrate that Randall's had actual knowledge of a dangerous condition that caused Plaintiff's injury.

Again, Plaintiff's expert opines that the dangerous condition was caused by the combination of Randall's decisions to: convert the refrigeration system at Store 2673 to R-448A refrigerant; not perform preventative maintenance; and fail to address documented leaks. ECF 80-6 at 6-11. The issue on summary judgment is whether Plaintiff has raised a genuine issue of fact as to Randall's actual knowledge of the dangerous condition alleged to have been created by having R-448A refrigerant in a system on which preventative maintenance was not being performed and which suffered from leaks.

Plaintiff's expert's Declaration summarizes the maintenance events involving Rack No. 2 between April 2016 and June 2019 of which Randall's was aware:

11

- Approximately 400 pounds of refrigerant was added to the system (not counting the quantity installed during the change from R-22 to R-448A.);

- There were at least 8 references to high pressure or high temperature related issues;

- There were at least 7 references to condenser fan repairs for Rack No. 2 or No. 3 (connected to the same condensing unit);

- There were numerous references to problems with vibrations, knocking, compressor replacements, or cracked pipes; and

- Mr. Scheaffer made three separate site visits to effect emergency repairs.

*Id.* at 9. According to Plaintiff's expert, "the frequency of both temperature control failures and refrigerant leaks, the need for replacement condenser fan motors, and other system failures were **'red flag' warnings** for Randall's and its Director of Maintenance that Rack 2 was at or near the end of its useful service life." *Id.* at 223 (emphasis in original). In addition, Plaintiff's expert opines that the July 2018 rupture in the same discharge header that was repaired and later failed, injuring Plaintiff, "was a red-flag warning to Randall's that the piping associated with Rack No. 2 was distressed and should have been replaced." *Id.* at 8.

In addition, Plaintiff has presented evidence demonstrating that Randall's knew service calls for Rack No. 2 were intensifying in the weeks leading up to the incident. During preventative maintenance on April 15, 2019, a Hussmann employee noted that the discharge line associated with Rack No. 2 was still leaking, a problem that had "*been written up several times*[;]" that the repair needed "*to be done asap*[;]" and would require "2 guys [at] 8 hr each." ECF 80-9 at 2. Plaintiff's expert characterizes these notes as "a call for Randall's to authorize significant repairs to the condensers which, absent effective operation result in excessively high pressure operation of the refrigeration system." ECF 80-6 at 53.

Randall's also knew from repair records that Hussmann made fifteen service calls to the store during the month of June 2019. ECF 80-4 at 26 (99:12-15); 28 (107:19-20). One of those calls resulted from a pressure spike on June 7 for which Hussmann was dispatched to perform "Urgent Priority" repairs (ECF 78-5 at 12). On June 19, 2019, Hussmann technicians were again called to the store to address spikes in pressure. ECF 80-10 at 2. Likewise, Plaintiff's expert describes the service entry records provided to Randall's by Hussmann as "'red flag' warnings about the poor, essentially unserviceable condition of the Rack No. 2 refrigeration system." ECF 80-6 at 54. Finally, Plaintiff's expert opines in a rebuttal report that the "red flag warnings" to Randall's (replacement of refrigerant lost to piping leaks; repeated compressor and condenser fan failures) were "frequent," and that Randall's "ignored the many obvious warning signs preceding the incident that the system was dangerous." *Id.* at 223, 214.

The evidence in the record shows that Randall's knew that it had cancelled the Preventative Maintenance policy originally set forth in the Services Agreement and implemented a Time and Materials policy, and that Randall's knew of the increased number of service calls and high-pressure incidents with the system during the month in which the incident occurred. The record demonstrates that Randall's implemented the Time and Materials policy because its Director of Maintenance, an experienced refrigeration technician, wanted to control the preventative maintenance and believed he could do a better job controlling costs and the preventative maintenance than Hussmann had been doing. In addition, Plaintiff's expert writes in his rebuttal report that "[a]lthough it may not be obvious to the lay reader, refrigeration systems such as Rack 2 are supposed to be closed systems, accordingly, any leaks are considered anomalous and repeated leaks are a sign of serious piping problems." *Id.* at 223. The facts and testimony in the record constitute circumstantial evidence from which a jury could infer that Randall's had actual knowledge of the dangerous condition of Rack 2 and the piping in the system.

13

Randall's argues that although it may have had knowledge of certain information, Plaintiff still has not shown it had actual knowledge of the dangerous condition that caused Plaintiff's injury. ECF 81 at 4. Yet, the point of Plaintiff's expert's reports and Declaration is that actual knowledge of Randall's lack of preventive maintenance combined with actual knowledge of the increasing number of problems with the refrigeration unit and Rack No. 2, were red flag warnings of a dangerous condition that Randall's chose to ignore. It is for the jury to weigh the credibility of Plaintiff's expert's testimony and decide whether the "red flags" created actual knowledge of a dangerous condition that Randall's ignored. Making all reasonable inferences in Plaintiff's favor, the Court concludes that a reasonable jury could find that this collection of circumstantial evidence demonstrates actual knowledge of the dangerous condition alleged by Plaintiff's expert and which resulted in the incident that caused Plaintiff's injury. Thus, Plaintiff has met his summary judgment burden to raise an issue of fact regarding Randall's actual knowledge of the alleged dangerous condition.

### B.  Conclusion and Recommendation

Plaintiff has presented summary judgment evidence which raises issues of fact as to whether Randall's (1) exercised control over the manner in which Hussmann technicians performed their work; and (2) had actual knowledge of a dangerous condition. Accordingly, the Court RECOMMENDS that Defendants' Motion for Summary Judgment (ECF 78) be DENIED as to Randall's and TERMINATED AS MOOT as to Albertson's LLC and Albertsons Companies, LLC.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on March 02, 2023, at Houston, Texas.

*/s/ Christina A. Bryan*
Christina A. Bryan
United States Magistrate Judge